UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT USER ID @sinatra1600 THAT IS STORED AT PREMISES CONTROLLED BY SNAPCHAT. | Case No. 1:20-mj-137 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, SA Jeffrey Buckles, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure, and made in support of 18 U.S.C. §§ 2703 (a), 2703 (b)(1)(a), 2703 (c)(1)(a) for a search warrant for information associated with certain Snapchat User ID's that are stored at premises owned, maintained, controlled, or operated by Snapchat, a social networking company headquartered at 63 Market Street, Venice, California 90291. The information to search and seize is described in the following paragraphs and in (more particularly described below in in Attachment A and Attachment B, incorporated herein).

2.  Your Affiant is employed as a Special Agent with the Drug Enforcement Administration ("DEA") and has been employed with the DEA since 2014. Your Affiant is currently assigned to the Bismarck Post of Duty and is charged with investigating drug trafficking and money laundering violations. Your Affiant is also attached to the Metro Area Narcotics Task Force (MANTF) in Bismarck, North Dakota, and assists several other drug task forces in the state of North Dakota. Your Affiant has attended the Drug Enforcement

1

Administration Basic Agent Academy in Quantico, Virginia, which has an emphasis in drug trafficking, money laundering, undercover operations, and electronic and physical surveillance procedures. Your Affiant has been involved in several investigations dealing with the possession, manufacture, distribution, and importation of controlled substances.

3. During my tenure with DEA and in local law enforcement, I have participated in numerous investigations involving violations of federal narcotics laws. I have attended schools and have been instructed in many aspects of narcotics investigations and am familiar with the narcotic laws promulgated under Title 21 of the United States Code and had classes on federal money laundering laws promulgated under Title 18 of the United States Code. I am aware of the following information from numerous sources, including but not limited to my own personal observations and participation in this investigation and my review and analysis of oral and written reports. I have initiated and/or participated in surveillance, the operation and debriefing of numerous drug dealers, drug users, and informants, performed both physical and electronic surveillance, and executed search warrants. Further, I have analyzed records documenting the purchase and distribution of illegal drugs, and the concealment of illegal narcotics profits.

4. I know, based on my knowledge, training, experience, and participation in other investigations, and consultations with other experienced investigators that drug traffickers commonly use social media (Facebook, Snapchat, Instagram, etc.) to aid them in their drug trafficking activities, and to conceal conversations from their cellular telephones.

5. This Affidavit is based on my personal knowledge and involvement in the investigation, and from information I have received from other persons involved in the investigation, including but not limited to agents from the Bismarck Police Department and the Metro Area Narcotics Task Force.

6.   The information contained in this Affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause to support the requested search warrant.

## PROBABLE CAUSE

7.   On 01/22/2020 Your Affiant received information from DEA personnel in Mazatlan, Mexico, who advised that on/about 01/20/2020 a package containing approximately 150 grams of suspected marijuana and approximately 1,000 Oxycodone pills was intercepted by law enforcement. The controlled substances were concealed inside the heels of shoes. The package was addressed to:

*Randy ABARCA*

*2809 Hawken St*

*Apt 15*

*58503, Bismarck, ND, USA.*

A phone number on the shipping label under the "to" section is (225)326-3456.

The return label was from:

*Carmen Perez Tapia*

*80003, Alvaro Obregon, 1345*

*Gabriel Leyva, Culiacan*

*Av. Alvaro Obregon No. 571 Col. Jo*

*80200 Culiacan Sinaloa*

*Mexico*

8.      On 01-27-2020 Your Honor authorized a search warrant for the residence associated with Randi ABARCA, at 2809 Hawken Avenue, Apartment #15, Bismarck, North Dakota.  On 01-30-2020 Your Affiant and other agents served the search warrant.  ABARCA and two minor children were present when law enforcement entered the residence.  Following a search, approximately two (2) pounds of crystal methamphetamine were located in ABARCA's bedroom in a safe which was contained inside of a suitcase.

9.      Your Affiant obtained ABARCA's cellular phone.  ABARCA provided the passcode for her cellular phone.  Your Affiant observed text messages between ABARCA and a phone number believed to be utilized by James W. JONES.  It appears that ABARCA and JONES are in a romantic relationship.  Text messages between JONES and ABARCA show JONES provided names and locations of individuals for ABARCA to send money to.  In turn, ABARCA sent text messages with photos of wire transfer receipts.  Subpoena returns have confirmed that ABARCA and other co-conspirators have sent money to the individuals that JONES has instructed them to.

10.     According to the North Dakota Parole and Probation Office, JONES lists the phone number referenced above which was originally found on the shipping label for the suspected Oxycodone seized in Mexico in January 2020, as his contact phone number with their office.  JONES is on probation supervision for Robbery (Richland County District Court Case No. 39-2013-CR-00250).

11.     Your Affiant has conducted several interviews with cooperators who have advised that JONES is a poly-drug distributer who distributes controlled substances in the Bismarck and Mandan areas. JONES lists an address in Minot, North Dakota with the probation office. However, JONES maintains a residence in Mandan, North Dakota, according to rental records located by Your Affiant. Cooperators have also told Your Affiant that JONES and his co-conspirators maintain different addresses to store controlled substances, and they utilize different people to register vehicles that they drive, so as to shield their identities and activities from law enforcement. In addition, cooperators have told Your Affiant that JONES works with Michael TAYLOR to sell controlled substances in the Bismarck and Mandan areas. TAYLOR is also on probation supervision with North Dakota Parole and Probation and has controlled substance violations. TAYLOR has an apartment in the same building as JONES and they sell controlled substances from the apartment building. TAYLOR lists an address with the probation office which is a short distance from the apartment he sells drugs at, both of which are in Mandan. Agents have previously conducted surveillance on several occasions during the months of January, February, and March 2020 and observed TAYLOR moving between his apartment location and the apartment where he sells controlled substances from.

12.     Your Affiant located the phone number utilized by Michael TAYLOR, in ABARCA's cellular phone. In the messages, TAYLOR instructs ABARCA to wire money to various individuals. Additionally, TAYLOR and ABARCA shared messages about the milligram amount of "percs," or Percocet, a commonly abused pharmaceutical pill.

13. In February 2020, Your Affiant and MANTF TFO Trevor Pollert conducted an interview with a source of information (SOI). The SOI advised agents that they have transported controlled substances on behalf of TAYLOR. The SOI said TAYLOR, JONES, and others have several apartments and work with many individuals to distribute controlled substances in North Dakota and elsewhere. The SOI said JONES has threatened their life in the past and they were afraid of JONES. The SOI said JONES and TAYLOR sell methamphetamine, heroin, and pills. The SOI had both the JONES and TAYLOR's phone numbers in their cellular phone, with messages showing both JONES and TAYLOR advising the SOI they are owed money and that the SOI needs to pay their debt. The SOI also advised that JONES and TAYLOR carry firearms. The SOI advised that JONES and TAYLOR frequently travel between Bismarck, Minot, and Fargo, for the purposes of obtaining and re-selling controlled substances. The SOI has gone on trips with TAYLOR to Fargo for the purpose of picking up drugs.

14. JONES currently has three open criminal cases: Possession of a Controlled Substance with Intent to Deliver (Morton County District Court Case No. 30-2019-CR-01271), Possession of a Controlled Substance- Schedule II Opiate (Ward County District Court Case No. 51-2019-CR-02469), and Possession of a Controlled Substance by Inmate (Ward County District Court Case No. 51-2020-CR-00088).

15. Beginning in February 2020, Bismarck Police Department (BPD) Detective (Det.) Joseph Olsen began sending Your Affiant videos from JONES' snapchat account, @Sinatra1600. Det. Olsen maintains an undercover snapchat account for the purposes of monitoring individual's activities who are under investigation, and has JONES' account on the "friends" list. Your

6

Affiant as well as Det. Olsen know that many individuals utilize Snapchat, WhatsApp, Signal, Wickr, and various other mobile messaging platforms for the purposes of distributing illegal controlled substances. This is because the messages appear for a set amount of time and then disappear, putting drug traffickers at ease that their messages are not retained. On/about 02-17-2020 JONES posted a video on his Snapchat of him dancing with what appear to be two handguns, one in each hand. On/about 02-18-2020 JONES posted a video on his Snapchat of a large amount of US Currency, in different denominations, wrapped in bank bands. On/about the same date, JONES posted a video on his Snapchat of him sitting in a vehicle holding a large amount of US Currency by his face with the caption "Currently". On/about 02-19-2020 JONES posted a video on his Snapchat of a stack of US Currency wrapped in a rubber band with a bank receipt attached indicating an amount of $20,000.00. On/about 03-03-2020 JONES posted a video on his Snapchat of himself dancing to music with a large amount of US Currency and smoking what appears to be a marijuana "blunt". The video is "geotagged", indicating location services put him in the area of the Station West Bar and Grill, which is located on the same city-block as the Lewis and Clark Apartment building (404 West Main Street) in Mandan, the same building where JONES is currently on the lease in apartment 214. JONES does not have this apartment listed as a residence with the probation office. In addition, JONES does not have any employment listed with the probation office. It should also be noted that JONES is prohibited from possessing firearms. The SOI referenced above in paragraph 7 made statements about seeing JONES in possession of firearms.

16.     Based on the above facts, Your Affiant believes the information contained above gives rise to probable cause that JONES and others are involved in the distribution of controlled substances and evidence of which will be found in JONES Snapchat account, @Sinatra1600.

## BACKGROUND REGARDING SNAPCHAT

18.     Snapchat, Inc. is a mobile application made by Snapchat, Inc. and is available through the iPhone App Store and Google Play. The application provides a way to share moments with photos, videos, and text. Snapchat's differentiating feature from other communications applications is that once a sender is able to set a variable amount of time the message is viewable by the receiver. This time can be between one and ten seconds. At the expiration of time, the message is deleted from Snapchat's servers. Similarly, the message disappears from the user's devices. If the receiver of a Snapchat message does not access the application on their device the message remains undelivered. Snapchat stores undelivered messages for 30 days. After 30 days the messages are deleted from the company's servers.

19.     Snapchat users have the following abilities:

a.      Snaps: A user takes a photo or video using their camera phone in real-time and then selects which of their friends to send the message to. Pictures and videos can also be sent from the saved pictures/videos in the gallery of the device. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it's opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

b.      Stories: A user can add photo or video snaps to their "Story". Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be

saved in Memories. Our Stories is a collection of user submitted snaps from different locations and events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event.

c. Memories: Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

d. Chat: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again.

e. Snapcash: Snapchat also offers a money transfer service called Snapcash. Users are able to transfer up to $2,500 per week using this service. Snapcash transactions are only permitted using Visa and Mastercard debit cards issued by a United States Financial Institution. Money transfers can only occur if the sender and receiver both have Snapchat installed and have linked an appropriate debit card to their accounts. To facilitate these transaction, Snapchat retains information about the method and source of payment including debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of

those involved in money transfers.

20. Information that Snapchat possesses and maintains:

   a. Personally Identifying Information: When a user creates an account they make a unique Snapchat username. This is the name visible to other Snapchat users. A user also enters a data of birth. This is supposed to prevent anyone under the age of 13 from using Snapchat. An email address is required to register a Snapchat account. A new user also has to provide a mobile phone number. This phone number is verified during the registration process. Snapchat sends an activation code that must be entered before proceeding with the registration step. However, a user may elect to bypass entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date.

   b. Usage Information: While a Snapchat message may disappear, the record of who sent it and when still exists. Snapchat records and retains log files and information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the number of messages exchanged, which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

   c. Device Information: Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the

International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat.

d. Device Phonebook and Photos: If a user consents, Snapchat can access from their device's electronic phonebook or contacts list and images.

e. Financial information: Snapchat retains information about the method and source of payment of customers who use the Snapcash service. This includes debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers. Snapcash generate a receipt for any transaction. The receipts are programmed to automatically delete after the sender and recipient have seen the message and swiped out of the Chat screen, unless either taps to save the message. Snapchat maintains transactional records for ten days. These records include information about the sender and receiver, the transaction amount, and date/time stamps of when the message was sent, received, and opened.

f. Message Content: Snapchat's motto is 'delete is our default.' Snapchat deletes a snap once it has been viewed. If the message is not read, because the user has not opened up the application, the message is stored for 30 days before being deleted. However, just because the snap no longer appear to the user, doesn't necessarily mean they are gone. For example, Snapchat has a feature called Replay. This allows users to view a previously viewed snap once per day. This feature is disabled by default and the user must opt-in to use Reply. Also, if a Snapchat user posts an image or video to the MyStory feature it can be viewed by their friends for 24 hours. If the user posted to the Our Stories feature, the snaps are archived and can be viewed through Snapchat.

21. Therefore, the computers of Snapchat are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, transaction information, and account application.

## CONCLUSION

22. I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the Snapchat account described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Special Agent Jeffrey Buckles
Drug Enforcement Administration
Bismarck POD

Subscribed and sworn to before me
on March 5, 2020:

_____
UNITED STATES MAGISTRATE JUDGE
Hon. Clare R. Hochalter
United States Magistrate Judge
District of North Dakota